# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

| | | |
|---|---|---|
| MARISOL VASQUEZ, | ) | |
| RAQUEL MARTINEZ, | ) | |
| DRAGANA PILIPOVIC, | ) | |
| WENDY MANCINO, | ) | |
| and YVONNE WATERS, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | Civil Action No.:  3:26-cv-449 |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| SIEGLING AMERICA, LLC | ) | |
| d/b/a FORBO SIEGLING | ) | |
| LLC | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Plaintiffs **Marisol Vasquez**, **Raquel Martinez**, **Dragana Pilipovic**, **Wendy Mancino,** and **Yvonne Waters** file this civil rights action for relief and damages against Defendant **Siegling America, LLC, d/b/a Forbo Siegling LLC,** based on the following factual allegations and causes of action.

## NATURE OF THE ACTION

1.     This action to correct discriminatory employment practices by Siegling America, LLC, d/b/a Forbo Siegling LLC asserts claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e *et seq.* and 42 U.S.C.A. § 1981.

**<u>PRELIMINARY STATEMENT OF CLAIMS</u>**

2.     Forbo Siegling LLC ("Forbo") makes belts, specifically conveyor and power transmission belts that are utilized in various production sectors from food processing to manufacturing of automotives and textiles.

3.     This lawsuit focuses on claims by four women, three of Hispanic ancestry, and one who is Serbian, that for several years, Forbo built a hostile and discriminatory work environment at its Huntersville, North Carolina factory that seemed bent on degrading employees who are either Hispanic or foreign-born, especially if they are female.

4.     To cite some of the most egregious examples of the culture Forbo has fostered: employees were forbidden to speak any language other than English; ethnic slurs and verbal abuse are commonplace; workers who are racial minorities were often undercompensated and compelled to work extra hours; and to speak up was to risk reprisal and retaliation.

5.     A fifth Plaintiff worked as a human resources ("HR") officer at the Forbo plant. She brings a constructive charge claim based on her decision to resign

rather than implement an order to terminate three of the Plaintiffs soon after they alleged discrimination.

6. To remedy Forbo's systematically unlawful conduct toward each of them, Plaintiffs seek economic damages of back pay and front pay; compensatory damages for emotional distress and mental anguish; as well as their attorneys' fees and costs of litigation.

## THE PARTIES

7. Marisol Vasquez is a Hispanic resident of North Carolina whose national origin is Peruvian. At all times relevant to this complaint, Vasquez was employed at the Forbo Huntersville plant.

8. Raquel Martinez is a Hispanic resident of North Carolina whose national origin is Peruvian. At all times relevant to this complaint, Martinez was employed at the Forbo Huntersville plant.

9. Dragana Pilipovic is a Slavic resident of North Carolina whose national origin is Serbian. At all times relevant to this complaint, Pilipovic was employed at the Forbo Huntersville plant.

10. Wendy Mancino is a Hispanic resident of North Carolina whose national origin is Peruvian. At all times relevant to this complaint, Mancino was employed at the Forbo Huntersville plant.

3

11. Yvonne Waters is a resident of North Carolina. At all times relevant to this complaint, Waters was employed at the Forbo Huntersville plant.

12. Forbo is a corporation headquartered in Germany whose primary U.S. manufacturing facility is based in North Carolina.

## SUBJECT-MATTER JURISDICTION AND VENUE

13. Jurisdiction of this court is invoked pursuant to 28 U.S.C.A. §§ 1331 and 1343.

14. Venue is proper in this district and division under 28 U.S.C.A. § 1391(b)(1)-(2), as Defendant resides in and conducts business in this district and division and the acts or omissions giving rise to the claim occurred in the same venue.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

15. All four plaintiffs who pursue Title VII claims timely filed charges of discrimination and retaliation against Forbo with the Equal Employment Opportunity Commission ("EEOC").

16. On April 1, 2026, Vasquez received a notice of right-to-sue from the EEOC. A copy is attached as Exhibit A.

4

17. On April 1, 2026, Martinez received a notice of right-to-sue from the EEOC. A copy is attached as Exhibit B.

18. On April 1, 2026, Pilipovic received a notice of right-to-sue from the EEOC. A copy is attached as Exhibit C.

19. On March 9, 2026, Mancino received a notice of right-to-sue from the EEOC. A copy is attached as Exhibit D.

## FACTUAL ALLEGATIONS

20. Plaintiffs Vasquez, Martinez and Pilipovic were all assigned to Forbo's Prolink assembly department, which produces modular belts that are used in food processing, as well as in the automotive parts and tire industry.

21. Plaintiff Mancino was a member of the customer service team who was assigned to manage customer accounts in both North and South America.

22. Vasquez has worked in Forbo's Huntersville factory for approximately 20 years.

23. Martinez has worked in Forbo's Huntersville factory for approximately 14 years.

24. Pilipovic has worked in Forbo's Huntersville factory for approximately 8 years.

5

25. Mancino worked in Forbo's Huntersville factory from 2016 until her termination in 2024.

26. Waters was what Forbo refers to as an HR generalist, whose responsibilities included investigation of employee grievances.

### Forbo's "English only" culture

27. Parts of the Forbo plant, including the Prolink department where three of the Plaintiffs worked, imposed an unwritten rule that employees may only speak in English while onsite.

28. In the Prolink department, the English-only rule was harshly enforced by the lead production supervisor Ted Wilson and Rose Bouza, who held the title inventory planner. Employees of Hispanic and European ancestry were told by Wilson and Bouza to "speak English" and feared disciplinary consequences if they broke the rule.

29. The "English only" rule serves no legitimate business purpose; it is not rooted in safety or aimed at ensuring communications are understood. To the contrary, supervisors instruct workers to refrain from using the native language of their national origin even in casual conversations with each other. Vazquez, Martinez, and Pilipovic have heard some of the following justifications from Wilson

and Bouza for banning non-English communications: "This is America"; "you get paid in U.S. dollars."

30.     While Mancino worked in a separate unit in customer service, her supervisor Cindy Rudisill admonished her on several occasions for speaking Spanish during customer interactions.

31.     A substantial amount of the Forbo Huntersville workforce is Hispanic and another group of employees are naturalized citizens from Ukraine, who speak Serbian. To a number of these individuals, including Vasquez, Martinez, Pilipovic, and Mancino, having their natural language treated as a source of stigma was emotionally painful and built a sense of isolation.

**Demeaning treatment of ethnic minority women**

32.     The Prolink department was also a hotbed of racist and nationalistic slurs. Vasquez, Martinez, and Pilipovic have heard Wilson make remarks that Hispanic and European immigrant employees are "stupid"; and that foreign born employees are fortunate to be "guests to the United States" whom the company has no obligation to make "comfortable".

33.     Wilson often verbally abused Black, Hispanic, and European-born workers with sneers that they were like children who needed to be babysat. Wilson

routinely subjected the portions of the workforce who are ethnic or racial minorities to yelling and belittling jibes that they are lazy and don't work hard enough.

34. Under Wilson's leadership, Hispanic employees including Vasquez were often forced into more demanding working conditions and directed to operate more demanding machinery.

35. Vasquez and Martinez were often ordered to work extra shifts on Saturdays, while white, American-born employees were rarely if ever required to work weekend shifts.

36. The three plaintiffs who worked in Prolink also noticed another trend to the mistreatment: women employees who were Black, European-born or Hispanic were often subjected to intimidating language and raised voices by Wilson and Bouza.

**<u>Race and gender based favoritism in pay and promotions</u>**

37. An environment that routinely degrades certain classes of employees will predictably withhold opportunities for promotion and higher compensation for those individuals. That is what all three plaintiffs in Prolink observed: women who were ethnic minorities were invariably under-compensated in comparison with male or American-born white peers with substantially less tenure and experience.

8

38. In addition, the Prolink department systematically limited promotions to white men regardless of their qualifications and competence.

## A retaliatory hostile environment

39. On May 18, 2022, Vasquez met with Yvonne Waters on the onsite HR team to lodge a complaint about the working conditions in the Prolink department. Vasquez described the pattern of verbal abuse targeting racial and ethnic minorities, especially women; being yelled at and admonished for speaking Spanish; as well as the fact that she was made to work more physically burdensome machinery.

40. Waters immediately launched an investigation that led her to speak with Martinez and Pilipovic.

41. In late May 2022, Martinez described to Waters a culture of persistent verbal abuse and marginalization of ethnic minorities; forced overtime; anti-immigrant remarks by Wilson; and the English-only rule.

42. In June 2022, Pilipovic was interviewed by Waters and provided her own account of inequitable compensation and promotions based on the combination of ethnicity and gender; and the degrading treatment of European national immigrants.

43. In the early summer of 2022, the HR team including Waters and Lori Gillespi, the site HR manager, suspended Wilson pending investigation and

convened a meeting with Helmut Grohschaedl, the President of Forbo North America, and the onsite management team to discuss the allegations against Wilson.

44. Grohschaedl denounced the complaints as gripes by disgruntled employees and directed the HR department to reinstate Wilson.

45. Participants in the HR briefing about the investigation apprised Wilson that Vasquez and Martinez had been the primary sources of the complaints against him.

46. In July 2022, soon after learning of the investigation, Wilson aggressively began to retaliate. Both Vasquez and Martinez were suddenly directed to work in a section of the unit that exposed them to direct sunlight in the middle of the summer.

47. Wilson reorganized the seating charts on the production in a manner that prevented Hispanic or European employees from being seated next to each other–a bizarrely petty twist on the Biblical principle that "where two or more are gathered", (Matthew 18:20) that was evidently meant to punish fraternization among the employees he saw as the sources of the complaints against him.

48. On July 6, 2022, Martinez complained about the extreme heat exposure. A day later, she was demoted from a team lead position.

49. At some point in July 2022, Sandra Rausch, the Global President of HR arrived to convene an onsite inquiry into the discrimination allegations at the plant. Rausch met with Martinez and Pilipovic.

50. While Waters initially had hopes that Rausch's intervention would reverse the spiraling retaliation at the plant, those hopes proved short-lived. Waters quickly discovered that Grohschaedl was working to actively discredit the investigation that the onsite HR team had launched.

51. Rausch's supposed investigation determined that Vasquez, Martinez and Pilipovic had attempted to instigate unrest at the Forbo plant and Waters was ordered to fire the three of them.

52. Waters refused to carry out the instruction, which she perceived as an unlawful act of retaliation, and resigned rather than face certain termination herself.

53. After Waters' stand, Forbo did not follow through with the plan to fire the supposed instigators. But on July 20 and July 21, 2022, Vasquez and Martinez were abruptly transferred out of the Prolink team to other departments.

54. Each transfer was a thinly disguised punishment. In Vasquez's case, despite the management team's knowledge that she suffers from rheumatoid arthritis, she was moved to the treadmill operation, a part of the production process

that demands the kind of constant repetitive movement that can be debilitating for an individual with arthritis.

55.     Martinez was transferred to the department that manufactures postal and delivery belts where she was for a number of months mandated to work three mandatory Saturday shifts every month.

56.     While Pilipovic was not transferred, she was abruptly disciplined in the summer of 2022 for engaging in an alleged inappropriate relationship with another Forbo employee, an allegation she denied and that was not substantiated by any evidence.

### Retaliation against Mancino

57.     The same summer of 2022, Mancino was requested by Waters to provide translation during some of the investigative interviews with employees, a role that seemed innocuous to Mancino.

58.     Mancino's supervisor Cindy Rudisill instructed her that her translating role was not appreciated by the management team and she subsequently directed Mancino to stop "assisting" the investigation.

59.     Over the next eighteen months, Mancino's own work conditions deteriorated. She was overlooked for promotional opportunities, and she was informed that her attendance was being scrutinized for unauthorized absences.

Mancino was directed to manually check in instead of using the ADP time management app on her phone to clock into work.

60.     One of Mancino's largest customer service accounts was also taken from her and she was denied several raises for which she was eligible based on sales performance.

61.     On March 8, 2024, Mancino filed a complaint with the HR department alleging that she had been subjected to race and national origin discrimination and that she had been retaliated against since she assisted during the HR investigation.

62.     On April 4, 2024, Mancino was terminated and informed that she was no longer viewed as a good "cultural fit" for the organization.

### Current conditions at Forbo

63.     Martinez was injured in September 2022 when she suffered a severe injury at work and has remained on long-term disability.

64.     Vasquez and Pilipovic remain employed at Forbo. While the plant has undergone several changes in the leadership and management structure–Wilson and Grohschaedl have both left the company–both of these plaintiffs have remained in a stagnant position. They have received routine cost of living increases but none of the progressive compensation increases typically awarded to longer-tenured employees;

nor have they been steered toward promotional opportunities as Forbo routinely does for favored long term employees.

65. While the multi-year EEOC investigation in this case likely insulated Vasquez and Pilipovic from the aggressive retaliation the Forbo plant routinely practiced from 2022 to 2024, Forbo declined conciliation during the EEOC process.

## CAUSES OF ACTION

## COUNT I

**(on behalf of Marisol Vasquez, Raquel Martinez, and Dragana Pilipovic, alleging a discriminatory hostile work environment, in violation of Title VII of the Civil Rights Act, 42 U.S.C.A. § 2000e-2(a)(1))**

66. Plaintiffs Vasquez, Martinez, and Pilipovic incorporate by reference the factual allegations in this complaint as though set forth fully and separately herein.

67. Plaintiffs Vasquez, Martinez, and Pilipovic were subjected to a work environment that was permeated with discriminatory intimidation, ridicule, and insult that was severe or pervasive enough to alter the terms and conditions of their employment and create an abusive working environment.

68. The discriminatorily abusive conditions were based on a combination of their race, national origin, and gender.

14

69. The conditions to which Vasquez, Martinez, and Pilipovic were subjected included but were not limited to the imposition of an English-only rule that marginalized employees who were Hispanic or European-born immigrants; verbally abusive language from a supervisory figure; as well as oppressive and burdensome working conditions.

70. Liability for the discriminatory conditions can be imputed to Forbo in that they were perpetrated by their lead supervisor in the Prolink department, and Vasquez, Martinez, and Pilipovic reported the conditions to the company to no avail.

71. As a result of the discriminatorily abusive conditions inflicted by Forbo, Plaintiffs Vasquez, Martinez, and Pilipovic suffered compensatory damages including emotional distress and mental anguish.

## COUNT II

**(on behalf of Marisol Vasquez, Raquel Martinez, and Dragana Pilipovic, alleging a discriminatory hostile work environment, in violation of 42 U.S.C.A. § 1981)**

72. Plaintiffs Vasquez, Martinez, and Pilipovic incorporate by reference the factual allegations in this complaint as though set forth fully and separately herein.

73. Plaintiffs Vasquez, Martinez, and Pilipovic were subjected to a work environment that was permeated with discriminatory intimidation, ridicule, and

15

insult that was severe or pervasive enough to alter the terms and conditions of their employment and create an abusive working environment.

74. The discriminatorily abusive conditions were based on a combination of their race or national origin.

75. The conditions to which Vasquez, Martinez, and Pilipovic were subjected included but were not limited to the imposition of an English-only rule that marginalized employees who were Hispanic or European-born immigrants; verbally abusive language from a supervisory figure; as well as oppressive and burdensome working conditions.

76. Liability for the discriminatory conditions can be imputed to Forbo in that they were perpetrated by their lead supervisor in the Prolink department, and Vasquez, Martinez, and Pilipovic reported the conditions to the company to no avail.

77. As a result of the discriminatorily abusive conditions inflicted by Forbo, Plaintiffs Vasquez, Martinez, and Pilipovic suffered compensatory damages including emotional distress and mental anguish.

## COUNT III

**(on behalf of Marisol Vasquez and Raquel Martinez, alleging a retaliatory hostile work environment, in violation of Title VII of the Civil Rights Act, 42 U.S.C.A. § 2000e-3(a))**

16

78.     Plaintiffs Vasquez and Martinez incorporate by reference the factual allegations in this complaint as though set forth fully and separately herein.

79.     Vasquez and Martinez engaged in protected activity under Title VII in that they complained to Forbo of discriminatory conduct based on their race, national origin, or gender.

80.     Based on their protected activity, Vasquez and Martinez were subjected to retaliatory conduct including but not limited to physically oppressive working conditions; punitive transfers, and in Martinez's case, a demotion.

81.     The retaliatory conduct to which Vasquez and Martinez were subjected was severe or pervasive enough that it would have dissuaded a reasonable employee from making or supporting a charge of discrimination.

82.     As a result of the retaliatory hostile environment inflicted by Forbo, Plaintiffs Vasquez and Martinez suffered compensatory damages including emotional distress and mental anguish.

## <u>COUNT IV</u>

**(on behalf of Marisol Vasquez and Raquel Martinez, alleging a retaliatory hostile work environment, in violation of 42 U.S.C.A. § 1981)**

83.     Plaintiffs Vasquez and Martinez incorporate by reference the factual allegations in this complaint as though set forth fully and separately herein.

84. Vasquez and Martinez engaged in protected activity under § 1981 in that they complained to Forbo of discriminatory conduct based on their race, national origin, or gender.

85. Based on their protected activity, Vasquez and Martinez were subjected to retaliatory conduct including but not limited to physically oppressive working conditions; punitive transfers, and in Martinez's case, a demotion.

86. The retaliatory conduct to which Vasquez and Martinez were subjected was severe or pervasive enough that it would have dissuaded a reasonable employee from making or supporting a charge of discrimination.

87. As a result of the retaliatory hostile environment inflicted by Forbo, Plaintiffs Vasquez and Martinez suffered compensatory damages including emotional distress and mental anguish.

## <u>COUNT V</u>

**(on behalf of Wendy Mancino, alleging retaliatory termination, in violation of Title VII of the Civil Rights Act, 42 U.S.C.A. § 2000e-3(a)(1))**

88. Plaintiff Mancino incorporates by reference the factual allegations in this complaint as though set forth fully and separately herein.

89. Mancino engaged in protected activity under Title VII in that she lodged an internal complaint of racially discriminatory and retaliatory conduct.

18

90. Mancino was terminated based on her protected activity.

91. As a result of the retaliatory termination by Forbo, Plaintiff Mancino has suffered monetary damages, including but not limited to back pay and front pay; and noneconomic damages including emotional distress and mental anguish.

## COUNT VI

**(on behalf of Wendy Mancino, alleging retaliatory termination, in violation of 42 U.S.C.A. § 1981**

92. Plaintiff Mancino incorporates by reference the factual allegations in this complaint as though set forth fully and separately herein.

93. Mancino engaged in protected activity under § 1981 in that she lodged an internal complaint of racially discriminatory and retaliatory conduct.

94. Mancino was terminated based on her protected activity.

95. As a result of the retaliatory termination by Forbo, Plaintiff Mancino has suffered monetary damages, including but not limited to back pay and front pay; and noneconomic damages including emotional distress and mental anguish.

## COUNT VII

**(on behalf of Yvonne Waters, alleging constructive discharge, in violation of 42 U.S.C.A. § 1981**

19

96. Plaintiff Waters incorporates by reference the factual allegations in this complaint as though set forth fully and separately herein.

97. Waters elected to resign rather than execute an order by management to terminate Plaintiffs Vasquez, Martinez, and Pilipovic based on their internal complaints of race and national origin based discriminatory conduct.

98. The circumstances of Waters' separation from employment with Forbo constituted a constructive discharge in that she was subjected to an intolerable condition of employment in the form of an order to unlawfully terminate an employee or risk termination herself.

99. As a result of the constructive discharge by Forbo, Plaintiff Waters has suffered monetary damages, including but not limited to back pay and front pay; and noneconomic damages including emotional distress and mental anguish.

## **PRAYER FOR RELIEF**

Wherefore, based on the above-stated claims, Plaintiffs demand a trial by jury and that the following relief be granted:

A. In the case of Mancino and Waters, back pay, front pay, and lost benefits.

B. In the case of all Plaintiffs, compensatory damages to the extent allowed by law under the relevant federal statutes.

C. Attorneys' fees and costs of litigation.

D. Pre-judgment and post-judgment interest at the highest lawful rate.

E. Such other equitable and monetary relief as the court deems just and proper.

Respectfully submitted the 7th day of June, 2026.

## JURY TRIAL DEMAND

Plaintiffs respectfully request a trial by jury on all issues so triable.

Respectfully submitted this 7th day of June, 2026.

**HKM Employment Attorneys LLP**

*s/Artur Davis*
Artur Davis (application for special admission forthcoming)

ASB-3672-D56A (admitted in Alabama)
2024 3rd Ave. North, Suite 212
Birmingham, AL 35203
205-881-0935
adavis@hkm.com

*s/Sunny Panyanouvong-Rubeck*
P. Sunny Panyanouvong-Rubeck

N.C. Bar No. 39966
3623 Latrobe Drive, Unit 122
Charlotte, NC 28211
980-300-6630
980-734-3851 (fax)
spanyanouvong-rubeck@hkm.com

**Attorneys for Plaintiffs**